IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 11-61-M-DLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| JASON WASHINGTON and | ) | |
| LISA FLEMING, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Recently, the Court agreed to reconsider its decision to allow Defendants to attempt at trial to establish estoppel by official misleading based on statements made by Flathead Tribal Police Officer Arlen Auld to Jason Washington. The issue is again ripe for decision. For the reasons stated below, the government's motion to exclude such evidence is denied.

## KEY FACTS AND DISPUTED FACTS

Arlen Auld is a drug investigator with the Flathead Tribal Police. At the time he visited Washington's marijuana grow facility in Polson, Montana, he was a member of the Northwest Drug Task Force, a multi-jurisdictional entity that included members of state, federal, and tribal law enforcement agencies. Auld

testified at the August hearing that being part of the Task Force allowed him to make arrests and conduct searches and seizures outside of the Flathead Reservation. He also testified that he would hand off federal cases to a different authority, but that he either worked with or had met federal agents through the Task Force.

Auld visited Washington's Polson marijuana grow facility on three occasions— September 28, 2010, September 29, 2010, and January 19, 2011. It is unclear what prompted each of Auld's visits.

Auld told Washington's private investigator, Mark Fullerton, that a federal agent asked him to visit Washington's grow operation in Polson. He also told Fullerton that he was informed that the individual in charge of the facility was suspected of selling marijuana to non-patients. After he visited the facility, he stated that he called "the folks in Missoula" and reported back what he saw.

Auld's testimony at the August hearing was slightly different. He stated that he was unsure if it was a state or a federal agent who called him, but that he knew the person was a member of the Northwest Drug Task Force. He attested that he was only asked to verify the location of the grow facility and was not told that anyone was suspected of selling marijuana to non-patients. He testified he drove by the facility and verified its location, but that he did not approach the

facility on that occasion. His subsequent visits, he stated, were not prompted by Task Force requests to check out the operation, but rather by a civil complaint lodged by a neighbor who was concerned about having a marijuana grow operation in the neighborhood.

According to his testimony at the August hearing, the first time Auld knocked at the Polson facility, he introduced himself to the construction workers who answered the door as a member of the Northwest Drug Task Force. The workers asked him to return another time when Washington was present. Auld returned later and was met by a group of at least five people, including Washington. He testified that he again told the group that he was a member of the Northwest Drug Task Force, although he denied representing himself as a federal agent. He testified that he was "shown everything" and invited to count the plants and look at the books. He also testified that he told the group that it was unlawful to dispense marijuana to Native Americans on the reservation. At one point in the hearing, the examining attorney suggested this was a matter of tribal law, which Auld did not contradict. Later, however, Auld testified that he cautioned Washington about selling marijuana to tribal members on the reservation because it was unlawful under federal law. Auld also admitted that while he did not specifically state that possession of marijuana was legal under federal law, he told

Washington that everything looked okay to him, seemed fine, or "seemed legit."

The third account we have about Auld's visit to the Polson facility is contained in a declaration signed by Officer Auld and filed by the government in support of its motion for reconsideration. In the declaration, Auld repeats that he never represented himself as a federal officer and insists that he was not working on behalf of the federal government. He avers that he told Washington not to sell marijuana to tribal members because marijuana remains illegal under federal law. He further explains that the first visit to the Polson facility took place on September 28, 2010, and that he returned the next day, September 29, 2010, at which time he spoke with Washington, informing him that "it all looks fine," or words to that effect. He declares that these visits were in response to "some community complaints" about the facility. He also attests that he visited the facility a third time on January 19, 2011, pursuant to a request from Detective Jon Gunter with the Missoula County Sheriff's Department. During this visit—which he described as "the extent of [his] involvement with the [Northwest Drug Task Force]"—he took photos that he later emailed to Detective Gunter, but did not speak with Washington or Fleming.

Officer Auld's declaration, which is the most recent iteration of his recollection of the events in question, fails to definitively clarify what actually

occurred on any of the three occasions when Officer Auld visited Washington's marijuana grow facility near Polson, Montana. We now have three versions of what occurred, which supports the Court's belief that what we have here is a classic factual dispute which is best left to the jury to resolve.

## ANALYSIS

The Court's reconsideration of this issue starts with the principle that "the burden for making a prima facie case is not an onerous one." *United States v. Collins*, 551 F.3d 914, 920 (9th Cir. 2009) (internal quotation marks and citation omitted). "[I]f the pretrial motion raises factual questions associated with the validity of the defense, the district court cannot make those determinations." *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010) *cert. denied,* 131 S. Ct. 2919 (2011) (citation omitted). That is the prerogative of the jury. *Id.* A defense may only be rejected or accepted on its merits as a matter of law if the Court "[does] not need to choose between witnesses nor judge credibility." *Id.* (internal quotation marks and citation omitted).

There is a factual dispute concerning each of the elements of the defense at issue. The defense of estoppel by official misleading—which is also referred to as entrapment by estoppel, *United States v. Batterjee*, 361 F.3d 1210, 1216 n.6 (9th Cir. 2004)—"applies when an authorized government official tells the defendant

that certain conduct is legal and the defendant believes the official." *United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir. 1991). To receive a jury instruction on the defense, a defendant must present a prima facie case that "(1) an authorized government official, empowered to render the claimed erroneous advice, (2) who has been made aware of all the relevant historical facts, (3) affirmatively told him the proscribed conduct was permissible, (4) that he relied on the false information, and (5) that his reliance was reasonable." *Batterjee*, 316 F.3d at 1216 (citations, internal quotation marks omitted).

With respect to the first element, defendants accused of a federal offense are not entitled to rely on the representations of a state or local official unless they show the official is "an authorized agent of the federal government . . . who has been granted the authority from the federal government to render such advice." *Brebner*, 951 F.2d at 1026. This element "focuses on the conduct of the government officials rather than on a defendant's state of mind." *Id.* at 1025. There is a factual dispute whether Auld was acting as an authorized agent of the federal government when he spoke to Washington and whether he had the authority to give Washington erroneous advice about federal law. As in *United States v. Schafer*, the jury must decide whether Auld, a tribal police officer and a member of the Northwest Drug Task Force, was acting as a federal agent at the

relevant time and whether he "could bind the federal government" to an erroneous interpretation of federal law. 625 F.3d at 637.

Also like in *Schafer*, the jury must decide whether Officer Auld "affirmatively misl[ed]" Defendants into believing their marijuana grow was legal under federal law and whether he "express[ly] authoriz[ed]" their conduct. *Id.* at 636, 637. It is not sufficient for him to have suggested they would not be prosecuted— Defendants must prove they were "lulled into believing their marijuana operation was legal." *Id.* at 637. At this stage, it is unclear what precisely Auld said to Washington and whether his statements communicated that the marijuana grow was "legit," "fine," or "okay" under federal law, as opposed to state law.

The remaining elements are also disputed. It is debatable what the relevant historical facts are in this case and whether Officer Auld knew those facts when he spoke to Washington. Nor is it clear whether either defendant relied on Auld's "alleged erroneous statements" about the Polson facility in their actions at the Wye facility. *Id.* at 637. Reliance is an intensely factual determination that requires testimony. Evidence that supports an inference of reliance must be presented as to each defendant in order for each of them to be entitled to a jury instruction concerning the defense. *Id.* at 637–38. Finally, the jury must decide whether each

defendant's alleged reliance on Auld's representations to Washington was reasonable. "A defendant's reliance is reasonable if a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." *Batterjee*, 361 F.3d at 1217 (internal quotation marks and citation omitted).

Deciding these issues would require the Court to assess witnesses' credibility and weigh conflicting facts. Such determinations fall within the province of the jury. Accordingly, at trial, Defendants may present evidence relevant to the defense of estoppel by official misleading based on Officer Auld's statements to Washington. If they present a prima facie case as to each element, they will be entitled to an instruction on the defense.

IT IS HEREBY ORDERED that the government's motion (doc. 356) is DENIED.

Dated this 2nd day of October 2012.

_____
Dana L. Christensen, District Judge
United States District Court